District Court, W. D. New York.

April 23, 1930.

## BALTIMORE & CAROLINA S. S. CO. et al. v. NORTON et al.

### No. 4839.

District Court, E. D. Pennsylvania.

Nov. 27, 1929.

272

Swartz & Campbell, of Philadelphia, Pa., for plaintiff.

Calvin S. Boyer, U. S. Atty., of Philadelphia, Pa., for Deputy Commissioner.

Michael Serody, of Philadelphia, Pa., for George Anderson.

KIRKPATRICK, District Judge.

This is a proceeding in equity under section 921 (33 USCA) of the Longshoremen's and Harbor Workers' Compensation Act to set aside an order of a deputy commissioner awarding compensation to the respondent.

The deputy commissioner found that on June 15, 1928, the respondent Anderson was in the employ of the complainant the Baltimore & Carolina Steamship Company, and, while performing service for his employer, sustained personal injury consisting of a compression fracture of the tenth and twelfth dorsal vertebræ, and that, as a result of the injury, the respondent was totally disabled, such total disability continuing to the time of the award. The deputy commissioner awarded compensation at the weekly rate of $15.03, and further found that it could not be determined whether there would be a permanent disability, and, if so, the degree of the same.

In Obrecht-Lynch Corporation v. Clark (D. C.) 30 F.(2d) 144, it was held that, where the findings of the commissioner are supported by proven facts, the court will not disturb them. The statute, however, provides that, "if not in accordance with law, a compensation order may be suspended or set aside, in whole or in part. * * *" Under this power we are asked to review the compensation order in two particulars.

1. The complainant contends that the method of ascertaining the defendant Anderson's wages as a basis for compensation was not in accordance with law. The deputy commissioner did not state the method by which he arrived at the amount of the compensation awarded, but the complainant's position is that it is mathematically demonstrable that he did not arrive at it by the only method which was in accordance with law. Section 910 of the act provides for the determination of the wages upon which the compensation shall be based. Obviously, subsection (a) of this section does not apply to the instant case, because the injured employee did not work in the employment, at which he was working at the time of the injury, during the whole of the year immediately preceding his injury. The complainant argues that subsection (b) does apply. It is as follows: "If the injured employee shall not have worked in such employment during substantially the whole of such year, his average annual earnings shall consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or in similar employment in the same or a neighboring place shall have earned in such employment during the days when so employed." It seems clear that the deputy commissioner could not have adopted the measure provided for in subsection (b), because the highest average daily wage of any employee of the same class as this respondent, working substantially the whole of the year immediately preceding the injury in a similar employment, as to which there was any proof, was $17.13. On that basis Anderson's compensation should have been two-thirds of that amount, or $11.42 per week. There was also submitted, at the request of the deputy commissioner, schedules showing the wages paid two other employees who worked for the complainant during the year preceding the injury. These are not in the official report of the proceedings before the commissioner, but, as to them, the complainant states

without contradiction that their average daily wages were less than those of the employee whose earnings were proved.

Subsection (c) of section 910 provides a third method which may be employed. It reads as follows: "If either of the foregoing methods of arriving at the annual average earnings of an injured employee can not reasonably and fairly be applied, such annual earnings shall be such sum as, having regard to the previous earnings of the injured employee and of other employees of the same or most similar class, working in the same or most similar employment in the same or neighboring locality, shall reasonably represent the annual earning capacity of the injured employee in the employment in which he was working at the time of the injury." The complainant argues that the deputy commissioner must have adopted some method other than that provided in subsection (b), and that, since no reason appears of record why the method of subsection (b) could not reasonably and fairly be applied, the award is not in accordance with law. I find nothing in the record to indicate that the method provided for in subsection (b) would not be fair to this respondent, and under it the award could not be more than $11.42 per week. To that extent I hold that the award is not in accordance with law.

■ 2. The other ground upon which we are asked to review this compensation order is that the respondent's refusal to submit to an operation, which a medical witness testified would alleviate his present condition and enable him to return to his ordinary employment, should have been made the basis for an order terminating his compensation until he agreed to undergo the operation in question. The operation was a major one, consisting of what was known as an autogenous bone graft from the patient's leg to his back to "fix" the fractured area. Five vertebræ would be involved in the proposed operation of fixation. The physician who advised the operation testified that in the past year he had performed fourteen similar operations and had had "fourteen good results. Your batting average is good. There is nothing, really, to fear. An individual that carries out the operation with the understanding of neural surgery, and the function of the spinal cord—there is really nothing very much to fear about it. It is a surgical procedure that in good hands is perfectly safe."

There is nothing in the act which authorizes the withholding of compensation until the complainant has submitted to an operation designed to remove his disability. It will be noted that this is not the case of a slight adjustment or minor operation. Nor is it the case of the refusal of a claimant to submit to ordinary treatment nor of voluntary exposure to infection or other causes of aggravation. In the latter cases, and perhaps even in the former, it might be argued that not the original injury but his refusal to take precautions or submit to ordinary treatment is the real proximate cause of his condition. What should be done in such cases is not before the court now, and is not decided. I am, however, of the opinion that the court has no right by withholding from this man his sole means of obtaining the necessities of life to compel him to submit himself to a major operation, even though the physician who recommends it is enthusiastic about its result.

In this case only one medical witness was called, and his testimony was definite, positive, and, of course, undisputed. There are, however, many operations as to which medical opinion is divided. In some cases procedure, concededly in its experimental stages, has ardent supporters in the profession who are quite sincere in their belief as to its infallibility. If the rule were to be adopted that complainants could be compelled to submit to major operations as serious as this one seems to be, cases might and probably would arise in which there would be a conflict of testimony as to the advisability of the operation and its probable effect upon the claimant. Decision of such questions would have to be made by the court. It would be dangerous and foolhardy for any judge to assume such responsibility where a human life might be endangered by his decision.

It may be that this claimant is doing a very foolish thing in refusing the surgical aid proffered. He may even, as the physician believes, be running the risk of becoming totally paralyzed. On the other hand, he is a man fifty-five years of age, and I cannot help thinking that the operation might be more serious in his case than if he were a much younger man. He probably thinks so too. At any rate, I do not think this court has power to withhold compensation in order to compel him to submit to the operation recommended in this case.

The compensation order is suspended in part by reducing the amount of the claimant's compensation to $11.42 per week. In all other particulars the order is affirmed.